# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  July 14, 2014

Mr. David C. Ahlstrom
Mr. James Alan Dyer
Sebaly, Shillito & Dyer
40 N. Main Street
Suite 1900 Kettering Tower
Dayton, OH 45423

Mr. Drew H. Campbell
Bricker & Eckler
100 S. Third Street
Columbus, OH 43215

Mr. William E Coughlin
Calfee, Halter & Griswold
1405 E. Sixth Street
Cleveland, OH 44114

Mr. Nicholas DiMascio
U.S. Department of Justice
Environment & Natural Resources Division
999 18th Street
Denver, CO 80202-3986

Mr. Robert H. Eddy
Mr. Erik J. Wineland
Gallagher Sharp
420 Madison Avenue, Suite 1250
Toledo, OH 43604

Mr. William Hatton Harbeck
Quarles & Brady
411 E. Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202

Mr. Glenn Anthony Harris
Ballard Spahr
210 Lake Drive E., Suite 200
Cherry Hill, NJ 08002

Mr. Stephen N. Haughey
Frost Brown Todd
301 E. Fourth Street, Suite 3300
Cincinnati, OH 45202

Ms. Leah Jane Knowlton
Ballard Spahr
999 Peachtree Street, N.E., Suite 1000
Atlanta, GA 30309

Mr. Martin H. Lewis
Tucker Ellis
950 Main Avenue, Suite 1100
Cleveland, OH 44113

Mr. Ronald M. McMillan
Calfee, Halter & Griswold
1405 E. Sixth Street
Cleveland, OH 44114

Mr. Frank Leslie Merrill
Mr. Anthony M. Sharett
Bricker & Eckler
100 S. Third Street
Columbus, OH 43215

Mr. Todd B. Naylor
Mr. Robert B. Sherwood
Goldenberg Schneider
One W. Fourth Street, 18th Floor
Cincinnati, OH 45202

Mr. Steven M. Sherman
Ms. Vicki J. Wright
Krieg DeVault
One Indiana Square, Suite 2800
Indianapolis, IN 46204

Mr. Larry Donald Silver
Langsam Stevens
1818 Market Street, Suite 3400
Philadelphia, PA 19103

Mr. Jack Allen Van Kley
Van Kley & Walker
132 Northwoods Boulevard, Suite C-1
Columbus, OH 43235

Mr. William David Wick
Wactor & Wick
180 Grand Avenue, Suite 950
Oakland, CA 94612

      Re:    Case Nos. 13-3273/3276, *Hobart Corp., et al v. Waste Management of Ohio, Inc., et al*
               Originating Case No. : 3:10-cv-00195

Dear Counsel,

    The court today announced its decision in the above-styled cases.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                        Yours very truly,

                        Deborah S. Hunt, Clerk

                        Cathryn Lovely
                        Deputy Clerk

cc:  Mr. John P. Hehman

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0152p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

―――――――――――

HOBART CORPORATION; KELSEY-HAYES COMPANY;
NCR CORPORATION,

        *Plaintiffs-Appellants*,

    v.

WASTE MANAGEMENT OF OHIO, INC. et al. (13-
3273) and COCA-COLA ENTERPRISES, INC. et al. (13-
3276),

        *Defendants-Appellees*.

Nos. 13-3273/3276

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
Nos.: 3:10-cv-00195; 3:12-cv-00213—Walter H. Rice, District Judge.

Argued:  June 26, 2014

Decided and Filed:  July 14, 2014

Before:  MOORE and KETHLEDGE, Circuit Judges;  TARNOW, District Judge.[*]

―――――――――――

## COUNSEL

**ARGUED:**  Nicholas A. DiMascio, UNITED STATES DEPARTMENT OF JUSTICE, Denver, Colorado, for Amicus Curiae.  Larry Silver, LANGSAM STEVENS, SILVER & HOLLAENDER LLP, Philadelphia, Pennsylvania, for Appellants.  Glenn A. Harris, BALLARD SPAHR LLP, Cherry Hill, New Jersey, for Appellees.  **ON BRIEF:**  Nicholas A. DiMascio, UNITED STATES DEPARTMENT OF JUSTICE, Denver, Colorado, for Amicus Curiae.  Larry Silver, LANGSAM STEVENS, SILVER & HOLLAENDER LLP, Philadelphia, Pennsylvania, James A. Dyer, David C. Ahlstrom, SEBALY SHILLITO + DYER LLP, Dayton, Ohio for Appellants.  Glenn A. Harris, BALLARD SPAHR LLP, Cherry Hill, New Jersey, William E. Coughlin, Susan R. Strom, Ronald M. McMillan, CALFEE, HALTER & GRISWOLD LLP,

―――――――――

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Nos. 13-3273/3276   *Hobart Corp. et al. v Waste Management of Ohio et al.*   Page 2

Cleveland, Ohio, Robert H. Eddy, Erik J. Wineland, GALLAGHER SHARP, Toledo, Ohio, Stephen Haughey, FROST BROWN TODD LLC, Cincinnati, Ohio, Leah J. Knowlton, BALLARD SPAHR LLP, Atlanta, Georgia, Robert Sherwood, GOLDENBERG SCHNEIDER, L.P.A., Cincinnati, Ohio for Appellees in 13-3276.   Frank L. Merrill, Drew H. Campbell, Anthony M. Sharett, BRICKER & ECKLER LLP, Columbus, Ohio, William D. Wick, WACTOR & WICK LLP, Oakland, California, William H. Harbeck, QUARLES & BRADY LLP, Milwaukee, Wisconsin, Jack A. Van Kley, VAN KLEY & WALKER, LLC, Columbus, Ohio, Vicki J. Wright, KRIEG DE VAULT LLP, Indianapolis, Indiana, Steven M. Sherman, KRIEG DE VAULT LLP, Carmel, Indiana, Martin H. Lewis, TUCKER ELLIS LLP, Columbus, Ohio, for Appellees in 13-3273.

——————————

**OPINION**

——————————

KAREN NELSON MOORE, Circuit Judge.   This case involves the apportionment of liability between various entities that allegedly created an environmental hazard at a landfill in Ohio.   In 2006, Plaintiffs-Appellants, Hobart Corporation, Kelsey-Hayes Company, and NCR Corporation (collectively, "Appellants"), entered into a settlement agreement with the United States Environmental Protection Agency ("EPA"), agreeing to pay for a study of the site and to reimburse the government's response costs in exchange for a partial resolution of Appellants' liability.   Nearly four years later, Appellants filed the first of two actions under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 94 Stat. 2767, the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 100 Stat. 1613 (both of which are codified at 42 U.S.C. §§ 9601–9675), and Ohio common law, seeking to recover their costs or gain contribution from other entities responsible for the contamination.   In this first case ("*Hobart I*"), Appellants sued Waste Management of Ohio, Inc. ("Waste Management"), Bimac Corporation, Bridgestone Firestone, Inc. ("Bridgestone"), Dayton Power & Light Company ("DP&L"), Cargill, Inc. ("Cargill"), Monsanto Company ("Monsanto"), Valley Asphalt Corporation ("Valley Asphalt"), IRG Dayton I, LLC ("IRG Dayton"), and other unknown entities.   Appellants alleged three relevant causes of action:   a cost-recovery action under CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B); a contribution action under CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B); and an unjust-enrichment action under Ohio common law.   In 2012, Appellants brought another case ("*Hobart II*"), alleging the same three causes of action, against DAP Products, Inc. ("DAP"), Coca-Cola

Enterprises, Inc. ("Coca-Cola"), The Sherwin-Williams Company ("Sherwin-Williams"), and GlaxoSmithKline LLC ("GSK") (collectively, with the defendants in *Hobart I*, "Appellees").

In both cases, the district court dismissed Appellants' § 113(f)(3)(B) contribution claims as untimely and dismissed the unjust-enrichment claims for failing to state a valid cause of action under Ohio law. In *Hobart I*, the district court allowed limited discovery on the § 107(a)(4)(B) claims but, ultimately, granted summary judgment to the *Hobart I* defendants, finding that CERCLA and controlling caselaw prohibit a party that has entered a liability-resolving settlement agreement with the government from prosecuting such an action. The district court, in the same order, dismissed the cost-recovery action in *Hobart II* for the same reasons. Appellants now bring this consolidated appeal. We **AFFIRM** the district court's dismissals and its grant of summary judgment to Appellees.

## I. BACKGROUND

### A. CERCLA Primer

"Congress enacted CERCLA in 1980 to 'promote the timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination.'" *CTS Corp. v. Waldburger*, 573 U.S. ---, 134 S. Ct. 2175, 2180 (2014) (quoting *Burlington N. & Santa Fe R. Co. v. United States*, 556 U.S. 599, 602 (2009)). To that end, CERCLA imposes liability upon four types of parties:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances . . . at any facility . . . , and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

CERCLA § 107(a)(1)–(4); 42 U.S.C. § 9607(a)(1)–(4).

The statute also creates a complicated network of cost-shifting provisions, which apply depending upon who pays what and why. If the federal government identifies a contaminated site, it has several options. The government may clean up the site itself under CERCLA § 104, 42 U.S.C. § 9604; the government may compel a "Potentially Responsible Party" ("PRP") to clean up the site through an action under CERCLA § 106, 42 U.S.C. § 9606; or the government may enter into an agreement with a PRP under CERCLA § 122, 42 U.S.C. § 9622, that requires the PRP to clean up the site. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 161 (2004); *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 554–55 (6th Cir. 2007). If the government removes the waste and remediates the site, it may recover its response costs from PRPs under § 107(a)(4); if a private party actually incurs response costs rehabilitating the site, it may partially recover those response costs under § 107(a)(4)(B).[1] *United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007). In turn, any party sued under §§ 106 or 107, by the government or a private party, may seek contribution[2] from other PRPs under § 113(f)(1), so that the recovery costs can be distributed in an equitable fashion. *Cooper Indus.*, 543 U.S. at 165–66.

Another option for the government is to clean up the site itself and enter into a settlement agreement with PRPs to cover the government's response costs. *See* § 122(a), (g), (h). In this scenario, "[a] person who has resolved its liability to the United States . . . for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any [PRP] who is not a party to [the] settlement." § 113(f)(3)(B). In exchange for resolving its liability, the settling PRP "shall not be liable for claims for contribution regarding matters addressed in the settlement." § 113(f)(2).

---

[1] In *United States v. Atlantic Research Corp.*, the Supreme Court assumed without deciding that § 107(a) imposes joint-and-several liability upon PRPs. *See* 551 U.S. 128, 140 & n.7 (2007). In *Burlington Northern*, the Court determined that joint-and-several liability is not appropriate in every case; rather, liability must be divided according to common-law principles. 556 U.S. at 613–14 (citing *United States v. Chem-Dyne Corp.*, 572 F. Supp. 802 (S.D. Ohio 1983); Restatement (Second) of Torts § 433A (1976)). In this case, the government contends that "unlike liability to the government under § 107(a)(4)(A), liability to a PRP under § 107(a)(4)(B) is not joint and several." United States Br. at 8 n.3. We need not answer now whether § 107(a)(4) imposes joint-and-several liability in all cases and, therefore, we decline to do so.

[2] The Supreme Court has given "contribution" its common-law definition: "the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" *Atl. Research*, 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)).

While there are multiple avenues for the government and PRPs to apportion the costs of contamination and clean up, CERCLA contains several specific statutes of limitations as to the timing of lawsuits. Cost-recovery actions under § 107(a)(4) must be brought within three years "after completion of the removal action" or "for a remedial action, within [six] years after initiation of physical on-site construction." § 113(g)(2). Actions for contribution under § 113(f), however, must be filed within three years of "(A) the date of judgment in any action under [CERCLA] for recovery of such costs or damages, or (B) the date of an administrative order under [§ 122(g)] (relating to de minimis settlements) or [§ 122(h)] (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages." § 113(g)(3); *see also RSR Corp.*, 496 F.3d at 556–58 (discussing limitations periods).

## B. Facts

Since 1941, various parties have allegedly been disposing of waste at the South Dayton Dump and Landfill Site ("the Site"). R. 69 at 2, 5 (2d Am. Compl. at ¶¶ 2, 22) (Page ID #758, 761).[3] Between July 1973 and July 1976, hazardous substances—including arsenic, barium, mercury, and polynuclear aromatic hydrocarbons—were deposited at and around the Site. *Id.* at 2 ¶ 3, 5 ¶ 22 (Page ID #758, 761).

In the early 2000s, the EPA discovered that the soil and groundwater "had concentrations [of these substances] above background levels or maximum contaminant levels as established by the EPA." *Id.* at 8 ¶ 39 (Page ID #764). In 2002, the EPA proposed listing the Site on the National Priorities List under CERCLA § 105, 42 U.S.C. § 9605. *Id.* at 2 ¶ 3 (Page ID #758). The EPA withdrew this proposal for some reason and, then, proposed listing the Site again in 2004. *Id.* According to the Second Amended Complaint, the Site remains a proposed listing. *Id.*

The EPA identified several PRPs, including Appellants, who might be liable under CERCLA § 107(a) for the contamination. *Id.* at 8 ¶ 40 (Page ID #764). Rather than face a lawsuit, Appellants agreed to enter into an Administrative Settlement Agreement and Order on Consent ("ASAOC") with the EPA. *Id.* at 8 ¶ 41 (Page ID #764). Under the ASAOC,

---

[3]Unless otherwise noted, all record citations are to the record in *Hobart, Inc. v. Waste Mgmt. of Ohio, Inc.* ("*Hobart I*"), No. 3:10-cv-195 (S.D. Ohio).

Appellants agreed to conduct a Remedial Investigation and Feasibility Study ("RI/FS"), which would determine the extent of the contamination and alternatives for remedial action, and to cover the EPA's response costs. *Id.* at 8 ¶ 42 (Page ID #764); R. 17-1 at 19–23, 33–35 (ASAOC at 11–17 ¶¶ 35–41, 25–27 ¶¶ 79–81) (Page ID #201–05, 215–17). In exchange, "[the] EPA agreed to suspend its proposed listing of the Site on the [N]ational [P]riorities [L]ist and address the Site through its Superfund Alternative Sites program." R. 69 at 8 (2d Am. Compl. at ¶ 41) (Page ID #764).

    The ASAOC went into effect on August 15, 2006. *See* R. 17-1 at 50 (ASAOC at 37) (Page ID #232). In Paragraph 96, titled "Contribution," Appellants and the EPA explicitly agreed that the ASAOC "constitutes an administrative settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that [Appellants] are entitled, as of [August 15, 2006], to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4), for 'matters addressed' in [the ASAOC]." *Id.* at 39 (ASAOC at 31 ¶ 96(a) (Page ID #221). The "matters addressed" were the RI/FS and the EPA's response costs. *Id.* In addition, Paragraph 96 stated that, by signing the ASAOC, Appellants "resolved their liability to the United States for [the RI/FS] and Future Response Costs." *Id.* at 39 (ASAOC at 31 ¶ 96(b) (Page ID #221).

## C. Procedural History

    According to Appellants, "[they] have incurred response costs . . . in connection with the Site," and those costs are "in excess of [their] equitable shares . . . ." R. 69 at 9 (2d Am. Compl. at ¶ 43) (Page ID #765). As a result, they filed a lawsuit in *Hobart I* on May 24, 2010 against Waste Management, Bimac Corporation, Cargill, DP&L, Monsanto, Valley Asphalt, IRG Dayton,[4] and other unknown entities, seeking cost recovery and contribution under CERCLA §§ 107(a) and 113(f)(3)(B), respectively, damages for unjust enrichment, and a declaratory

---

    [4]In their initial complaint, Appellants filed this action against "Industrial Realty Group, LLC." R. 1 at 1 (Compl.) (Page ID #1). However, Appellants "learned that a different entity, IRG Dayton 1, LLC, [was] the proper party-defendant in this matter" and moved to amend their complaint. R. 16 at 1 (Mot. to Amend Compl.) (Page ID #152). The district court allowed this amendment, and Appellants filed their First Amended Complaint on July 19, 2010 with the proper parties listed. *See* R. 17 at 1, 14 (1st Am. Compl.) (Page ID #169, 182). On January 11, 2011, the district court ordered Appellants to file a Second Amended Complaint because the First Amended Complaint omitted two sentences included in the original Complaint. R. 68 at 1–2 (D. Ct. Order Re: Am. Complaint) (Page ID #755–56). That day, Appellants satisfied the order. *See* R. 69 at 1–14 (2d Am. Compl.) (Page ID #757–770).

judgment regarding liability.   R. 1 at 9–12 (Compl. at ¶¶ 44–60) (Page ID #9–12).   The gravamen of the complaint was that the defendants (or the companies of which they are the legal successors in interest) were also PRPs, liable for the contamination of the Site, and should, therefore, bear some of the clean-up costs.

On July 29, 2010, the *Hobart I* defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[5]   R. 27 at 1 (DP&L Mot. to Dismiss) (Page ID #265).   The *Hobart I* defendants argued that (1) the ASAOC does not qualify as an administrative settlement under § 113(f)(3)(B), *see id.* at 11–14 (DP&L Mot. to Dismiss) (Page ID #275–78) (citing *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452 (6th Cir. 2007)); (2) even if the ASAOC qualifies as an administrative settlement, Appellants' § 113 claim is time-barred, *see id.* at 14–15 (Page ID #279); (3) Appellants failed to allege facts sufficient to state a § 107 claim, *id.* at 16–21 (Page ID #281–85); and (4) CERCLA preempts Appellants' unjust-enrichment claim, *id.* at 21–24 (Page ID #285–88).   Appellants replied.   *See* R. 39 at 1–38 (Pl. Opp. to Mot. to Dismiss) (Page ID #520–557).

On February 20, 2011, the district court granted the motions to dismiss in part and denied them in part.   With respect to most of Appellants' direct § 107(a) claims, the district court overruled the *Hobart I* defendants' motions to dismiss, finding that the Second Amended Complaint contained sufficient allegations to support a finding that the *Hobart I* defendants arranged to have contaminants placed on the Site.   *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 840 F. Supp. 2d 1013, 1031 (S.D. Ohio 2011).   The district court, however, did dismiss Appellants' migration-based § 107(a) claims against the *Hobart I* defendants; it also dismissed all § 107(a) claims against IRG Dayton.   *Id.*   With respect to Appellants' § 113(f)(3)(B) claims against the *Hobart I* defendants, the district court found that § 113's three-year limitations period applied to this contribution action and that, because the action was filed more than three years after the ASAOC went into effect, it was time-barred.   *Id.* at 1034–35.   As a result, the district court dismissed Appellants' § 113(f)(3)(B) claims in their entirety.   *Id.* at 1035.   Finally, the

---

[5]On August 10, 2010, Bridgestone also filed a motion to dismiss.  *See* R. 33 at 1 (Bridgestone Mot. to Dismiss) (Page ID #363).  And on August 17, 2010, IRG Dayton filed a motion to dismiss.  *See* R. 35 at 1 (IRG Dayton Mot. to Dismiss) (Page ID #429).  DP&L's motion contained all arguments relevant to this appeal, and therefore, we refer only to DP&L's motion for the sake of simplicity.

district court found that Appellants failed to state valid unjust-enrichment claims.  *Id.* at 1037.
On June 23, 2011, the district court entered an order applying its decision on the above motions
to dismiss to the other parties involved.  R. 87 at 1–2 (D. Ct. Order Dismissing Claims) (Page ID
#903–04).

The parties then engaged in a protracted battle over discovery that is irrelevant to this
appeal.  On June 21, 2012, DP&L, one of the *Hobart I* defendants, filed a motion for summary
judgment, arguing that §§ 107(a) and 113(f) provide two, mutually exclusive causes of action.
R. 121 at 2–3 (DP&L Mot. for Summ. J.) (Page ID #1177–78).  Because Appellants could have
filed a § 113(f) action—but failed to do so timely—DP&L claimed that CERCLA prohibits the
district court from entertaining Appellants' § 107(a) action.  *Id.*  The other *Hobart I* defendants
either joined this motion or filed nearly identical ones.

On June 29, 2012, Appellants filed a Motion for Leave to File a Third Amended
Complaint.  This new complaint sought (1) "to add additional defendants," including the United
States; (2) "to add theories of owner/operator liability against [DP&L]"; and (3) "to allege that
[Waste Management] is the successor to additional [liable parties]."  R. 124 at 3 (Mot. for 3d
Am. Compl.) (Page ID #1350).  On the same day, Appellants also filed another action against
four different defendants,[6] alleging the same claims as in *Hobart I.*  R. 1 at 1–10 (Compl.) (Page
ID #1–10) (*Hobart II*).  The *Hobart II* defendants filed motions to dismiss, raising the same
arguments as in the *Hobart I* defendants' motions to dismiss and motions for summary judgment.

On February 8, 2013, the district court addressed the outstanding motions in both cases.
The district court concluded that a party can seek the recovery of costs under § 107(a) or
contribution under § 113(f), but not both; that the ASAOC was an administrative settlement
under §§ 113(f)(3)(B); and that Appellants were barred from bringing a § 107(a) action because
they could have sought contribution under § 113(f).  *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*,
923 F. Supp. 2d 1086, 1091–96 (S.D. Ohio 2013).  Accordingly, the district court granted the
*Hobart I* defendants' motions for summary judgment and the *Hobart II* defendants' motions to
dismiss.  This consolidated appeal follows.

---

[6] The district court assigned this action, *Hobart II*, case number 3:12-cv-213.

## II.  Standard of Review

Appellants challenge the district court's orders dismissing certain claims under Federal Rule of Civil Procedure 12(b)(6) and orders granting summary judgment.  We review de novo dismissals for failure to state a claim.  *Bright v. Gallia Cnty.*, --- F.3d ---, 2014 WL 2457629, at *9 (6th Cir. 2014).  Likewise, we review de novo a district court's grant of summary judgment.  *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 426 (6th Cir. 2014).  While there are differences in reviewing these two types of decisions, Appellants' claims require only the resolution of questions of statutory and contract interpretation, which are questions of law that we review de novo.  *United States v. Coss*, 677 F.3d 278, 283 (6th Cir. 2012) (statutory interpretation); *Royal Ins. Co. v. Orient Overseas Container Line Ltd.*, 514 F.3d 621, 634 (6th Cir. 2008) (contract interpretation).

## III.  Appellants' § 107(a) Claims

Appellants first attack the district court's conclusion that Appellants could not bring a cost-recovery action under § 107(a)(4)(B) because signing the ASAOC allowed Appellants to bring a § 113(f)(3)(B) contribution action.    Appellants do not contest the notion that §§ 107(a)(4)(B) and 113(f)(3)(B) are mutually exclusive remedies.  Rather, Appellants argue that the ASAOC is not an "administrative settlement" under § 113(f)(3)(B) and, therefore, that they never could file a § 113(f)(3)(B) contribution action.    In particular, Appellants cite the agreements in *ITT Industries*, 506 F.3d 452, and *Bernstein v. Bankert*, 733 F.3d 190 (7th Cir. 2013), and claim that the ASAOC is materially indistinguishable.  *See* Appellants Br. at 13–28.  Appellees and the United States disagree with this characterization of the ASAOC.[7]  *See* DP&L Br. at 11–26; DAP Br. at 10–15; United States Br. at 12–22.  After reviewing the agreements, we conclude that the ASAOC resolves Appellants' liability and, therefore, that the agreement is an administrative settlement under § 113(f)(3)(B).  As a result, because Appellants could have sued for contribution, they could not file and cannot proceed with a § 107(a)(4)(B) cost-recovery

---

[7] These arguments mirror the ones made by the parties in the district court except for the fact that each party has now adopted the other side's contentions.  *See* R. 27 at 6–10 (DP&L Mot. to Dismiss) (Page ID #275–79); R. 39 at 23–28 (Pl. Resp. to DP&L Mot. to Dismiss at 17–22) (Page ID #542–547).

action.  Thus, the district court was correct, and we **AFFIRM** the district court's decisions dismissing this claim and granting summary judgment on this issue.

## A.  Sections 107(a)(4)(B) and 113(f)(3)(B) Provide Mutually Exclusive Remedies

When Congress passed CERCLA in 1980, parties could proceed only under § 107, and the federal courts inferred a right to contribution.  *See Agere Sys., Inc. v. Advanced Envt'l Tech. Corp.*, 602 F.3d 204, 217 (3d Cir. 2010); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 127 (2d Cir. 2010).  In 1986, with SARA, Congress created the explicit contribution cause of action found today in § 113.  *See Niagara Mohawk*, 596 F.3d at 127.  The Supreme Court has recognized that these two sections "authorize[] . . . similar and somewhat overlapping remed[ies]," *Key Tronic Corp. v. United States*, 511 U.S. 809, 816 (1994), but these sections "provide two clearly distinct remedies" and "provid[e] causes of action to persons in different procedural circumstances," *Atl. Research*, 551 U.S. at 138, 139 (internal quotation marks omitted).

Navigating the interplay between these sections is not easy.  The best help that the Court has given us is to say that "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)."[8]  *Id.* at 139–40 n.6.  Problems arise, as the Court foresaw, when PRPs do not voluntarily incur expenses or involuntarily reimburse another entity—the dichotomy upon which the Court's divide seems to operate.  *See id.*; *see also Bernstein*, 733 F.3d at 208–09 (taking issue with the voluntary/involuntary dividing line).  Here, for instance, Appellants directly paid for the RI/FS, incurring an expense, but they commissioned the study only because they were obligated to do so under the ASAOC.  (Appellants also agreed to reimburse the government for response costs in the ASAOC, which clearly falls on the contribution side of the divide.)  PRPs in such situations find themselves in the twilight between a core § 107 cost-recovery action and a core § 113 contribution action.  The fact that Appellants

---

[8]In *Atlantic Research*, the Court focused upon § 113(f)(1)'s interaction with § 107(a), but the Court also repeatedly minimized the differences between § 113(f)(1) and (f)(3)(B).  *See, e.g.*, 551 U.S. at 140 n.7.  We see no logical distinction between the two subsections, and the parties offer none.  Therefore, we treat the Court's pronouncements upon § 113(f)(1)'s relationship with § 107(a) as if they were pronouncements upon § 113(f)(3)(B)'s relationship with § 107(a) as well.

directly incurred expenses suggests that they could seek cost recovery under § 107(a)(4)(B), while the existence of the administrative settlement seems to indicate that they are eligible only to bring a contribution action under § 113(f)(3)(B). The question is whether Appellants may choose under which section to proceed or whether CERCLA limits them to a certain cause of action.

CERCLA's text and structure lead us to conclude that PRPs must proceed under § 113(f) if they meet one of that section's statutory triggers. Section 107(a) sets out a PRP's liability, which the Supreme Court has interpreted to include liability to another PRP for response costs incurred by that PRP. *Atl. Research*, 551 U.S. at 135–37. Given this existing liability, the Court has inferred a cause of action, allowing any liable PRP to recover costs incurred. *Id.* Section 113(f), in contrast, is an explicit authorization for certain PRPs to file an action for contribution. *See Cooper Indus.*, 543 U.S. at 165–66. In *Cooper Industries*, the Court held that a PRP must demonstrate that certain preconditions were met before proceeding under § 113(f). *Id.* If § 113(f)'s enabling language is to have bite, though, it must also mean that a PRP, eligible to bring a contribution action, can bring only a contribution action. Given the choice, a rational PRP would prefer to file an action under § 107(a)(4)(B) in every case. Section 107(a)(4)(B) likely provides a broader avenue for recovery, *see supra* note 1, and has a longer limitations period than § 113(f), *see* § 113(g)(2)–(3). There would be no reason to limit § 113(f)'s availability if PRPs have § 107(a)(4)(B) as a fall-back option, and we generally do not interpret congressional enactments to render certain parts of these enactments superfluous. *See, e.g.*, *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 724 (2011). Therefore, it is sensible and consistent with the text to read § 113(f)'s enabling language to mean that if a party is able to bring a contribution action, it must do so under § 113(f), rather than § 107(a).

Moreover, this reading is fair. The language of § 113(f) permits PRPs to recover costs incurred pursuant to an administrative settlement agreement. Section 113(f)(3)(B) states: "A person who has resolved its liability to the United States . . . for some or all of a response action or for some or all of the costs of such action in an administrative . . . settlement may seek contribution from any person who is not party to a [similar] settlement . . . ." CERCLA defines "response" to include "removal" actions, which are defined—in part—as "such actions as may

be necessary to monitor, assess, and evaluate [site clean up]."  CERCLA § 101(23), (25), 42 U.S.C. § 9601(23), (25).   The expense of a RI/FS fits within this definition.   Therefore, Appellants, who sustain costs pursuant to an administrative settlement agreement, are not barred from seeking contribution for all costs under the terms of § 113(f)(3)(B).

In holding that §§ 107(a)(4)(B) and 113(f)(3)(B) provide mutually exclusive remedies we are saying nothing new or controversial.  Every one of our sister circuits to reach this issue has held that §§ 107(a)(4)(B) and 113(f)(3)(B) provide mutually exclusive remedies.  *See Bernstein*, 733 F.3d at 202; *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1237 (11th Cir. 2012); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011); *Agere Sys.*, 602 F.3d at 225; *Niagara Mohawk*, 596 F.3d at 127–28 & n.18.  The reasoning in *Atlantic Research* leads easily to this conclusion, as it focuses upon giving each section meaning.  Neither the parties nor the government contend otherwise.  *See* Appellants Br. at 16; DP&L Br. at 12–13; DAP Br. at 11–12; United States Br. at 10.  Therefore, in summary, we adopt the position that a PRP, which has entered into an administrative settlement with the government, thereby having met a statutory trigger for filing a contribution action, can bring only a § 113(f)(3)(B) action for contribution— not a § 107(a)(4)(B) cost-recovery action.

## B.  The ASAOC Is an "Administrative Settlement" Under § 113(f)(3)(B)

In this case, whether Appellants can bring a § 107(a)(4)(B) action depends upon whether the ASAOC is an "administrative settlement" under § 113(f)(3)(B).  Only if the ASAOC does not qualify as an "administrative settlement" under § 113(f)(3)(B) may Appellants' § 107(a)(4)(B) cost-recovery action go forward.  The district court determined that the express terms of the ASAOC, particularly the "unambiguous language [in] paragraph 96b," indicated that the ASAOC allowed Appellants to bring a contribution action under § 113(f)(3)(B).  *Hobart Corp.*, 923 F. Supp. 2d at 1094.  In addition, the district court distinguished a variety of cases cited by Appellants, including *ITT Industries*. *Id.* at 1094–96.  We agree with this conclusion.

Under § 113(f)(3)(B) and this circuit's caselaw, the defining feature of an "administrative settlement" is that the agreement "resolve[s] [the PRP's] liability to the United States or a State for some or all of a response action or for some or all of the costs of such action . . . ." § 113(f)(3)(B); *see ITT Indus.*, 506 F.3d at 459.  In determining whether the ASAOC resolves

some of Appellants' liability, we interpret the settlement agreement as a contract according to state-law principles.  *John B. v. Emkes*, 710 F.3d 394, 407 (6th Cir. 2013).  Under Ohio law, "[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties.  The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."  *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (internal quotation marks and citation omitted).

With this standard in mind, there are several aspects of the ASAOC that indicate that the parties intended for the ASAOC to resolve Appellants' liability with the government, making the ASAOC an "administrative settlement" under § 113(f)(3)(B).  First, Paragraph 96b states: "The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of *Section 113(f)(3)(B)* of CERCLA . . . pursuant to which [Appellants] have, as of the Effective Date, *resolved their liability* to the United States for the Work, and Future Response Costs."[9]  R. 17-1 at 39 (ASAOC at 31 ¶ 96b) (Page ID #221) (emphasis added).  Not only does this paragraph explicitly state that Appellants have resolved their liability, but it also cites the specific section of CERCLA at issue here.

Second, Paragraph 96a states:  "[t]he parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(2) of CERCLA . . . and that [Appellants] are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA . . . ."  *Id.* at 39 (ASAOC at 31 ¶ 96a) (Page ID # 221).  For this paragraph to have any meaning and Appellants to receive any protection from contribution actions, the ASAOC must be an administrative agreement under § 113(f).  *See Atl. Research*, 551 U.S. at 139; *ITT Indus.*, 506 F.3d at 458.  In addition, this paragraph cites § 122(h)(4), a provision governing cost-recovery settlements that § 113(g)(3)(B)—CERCLA's statute-of-limitations section—classifies with the other contribution

---

[9]The ASAOC defines "Work" as "all activities [that Appellants] are required to perform under this Settlement Agreement, except . . . Retention of Records."  R. 17-1 at 13 (ASAOC at 5 ¶ 11x) (Page ID #195). "Future Response Costs" are all costs incurred by the government in relation to the ASAOC.  *Id.* at 11 (ASAOC at 3 ¶ 11i) (Page ID #193).

actions.  *See ITT Indus.*, 506 F.3d at 460 (instructing courts to read § 113(f)(3)(B) in concert with § 113(g)(3)).

Third, the parties titled the ASAOC an "*Administrative Settlement Agreement* and Order on Consent."  R. 17-1 at 9 (ASAOC 1 ¶ 1) (Page ID #191) (emphasis added).  In doing so, the parties precisely matched the statutory language in § 113(f)(3)(B) ("administrative or judicially approved settlement").

Fourth, Paragraph 82 states:  "In consideration of the actions that will be performed and the payments that will be made by [Appellants] under the terms of this Settlement Agreement, . . . EPA covenants not to sue or to take administrative action against [Appellants] pursuant to Sections 106 and 107(a) of CERCLA . . . for the Work and Future Response Costs."  *Id.* at 36 (ASAOC at 28 ¶ 82) (Page ID #218).  Reading these provisions in concert, as Ohio law requires, we think it clear that Appellants and the government intended for the ASAOC to resolve Appellants' liability to the government.  Accordingly, the ASAOC is an administrative agreement within the meaning of § 113(f)(3)(B), allowing Appellants to bring a contribution action.  As a result of that ability, CERCLA and relevant caselaw preclude Appellants from bringing a § 107(a)(4)(B) cost-recovery action.

## C.  Appellants' Counterarguments Are Unconvincing

Even though Appellants agreed with our conclusion on this issue in the district court, *see* R. 39 at 23–28 (Pl. Resp. to DP&L Mot. to Dismiss at 17–22) (Page ID #542–547), they now offer several arguments against their former position.  They are not convincing.

First, Appellants claim that *ITT Industries* precludes a court from finding that the ASAOC is an administrative settlement within § 113(f)(3)(B).  *See* Appellants Br. at 18–24.  In *ITT Industries*, a previous panel of this court concluded that an "Administrative Order of Consent" ("*ITT* AOC") between the EPA and ITT Industries did not constitute a § 113(f)(3)(B) administrative settlement based on the specific terms of that document.  506 F.3d at 459–60.  But that decision does not compel Appellants' now-desired conclusion for at least two reasons.

One, the ASAOC here and the *ITT* AOC are not identical.  Given that this court must look to the specific terms of an agreement to determine whether it resolves a PRP's liability, *see*

*id.* (parsing *ITT* AOC's terms to determine whether that agreement resolved the PRP's liability), *ITT Industries* does not control this court's interpretation of the ASAOC, *see Foster Wheeler*, 678 N.E.2d at 526 ("[T]he meaning of any particular . . . contract is to be determined on a case-by-case and contract-by-contract basis, pursuant to the usual rules for interpreting written instruments."). As explained above, the ASAOC resolves some of Appellants' liability to the government, and under Ohio law, *ITT Industries* cannot change the import of that settlement agreement.

Two, to the extent that *ITT Industries* is relevant to our construction of the ASAOC, there are important differences between the ASAOC here and the *ITT* AOC.[10]  To start, the parties titled the ASAOC an "Administrative Settlement Agreement and Order on Consent," R. 17-1 at 9 (ASAOC at 1 ¶ 1) (Page ID #191), whereas the *ITT* parties titled their agreement an "administrative order by consent,"[11] *ITT* AOC at Page ID #225.  More substantively, the ASAOC contains Paragraph 96b, explicitly stating that Appellants' liability is resolved and citing § 113(f)(3)(B), as detailed above.  *See* R. 17-1 at 39 (ASAOC at 31 ¶ 96a–b) (Page ID #221).  In contrast, the *ITT* AOC's analogous paragraph contains only language stating that the "Respondent is entitled to protection from contribution actions or claims to the extent provided by Section 113(f)(2) and 122(h)(4)."  *ITT* AOC at Page ID #245.  There is no explicit statement that ITT Industries had resolved its liability—in paragraphs pertaining to contribution or elsewhere in the *ITT* AOC—nor is there any reference to § 113(f)(3)(B).  In addition, the government's covenant not to sue in the ASAOC is much broader than in the *ITT* AOC, *compare* R. 17-1 at 36 (ASAOC at 28 ¶ 82) (Page ID #218) *with ITT* AOC at Page ID #245; this covenant not to sue took effect immediately in this case, *compare* R. 17-1 at 36 (ASAOC at 28 ¶ 82) (Page ID #218) *with ITT* AOC at Page ID #245 (requiring payment first); and the government's reservation of rights and ability to withdraw from the ASAOC is much narrower in this case,

---

[10]Again, the ASAOC is available at R. 17-1 at 9–50 (ASAOC at 1–37) (Page ID #191–232).  The *ITT* AOC can be obtained from the Western District of Michigan's electronic docket.  The case number is 1:05-cv-674, and the *ITT* AOC is attached at R. 27-2 at 4–30 (*ITT* AOC at 1–26) (Page ID #224–50).  For the sake of clarity, we cite the *ITT* AOC as "*ITT* AOC at Page ID #[__]."

[11]As Appellants noted in the district court, the EPA changed the title of these agreements following *Cooper Industries* to make clear that agreements of this type were intended to be § 113(f)(3)(B) administrative settlements.  *See* R. 39 at 26–27 (Pl. Resp. to DP&L Mot. to Dismiss at 20–21) (Page ID #545–46); *see also* R. 39-1 at 2–3 (EPA Mem.) (Page ID #559–60).

*compare* R. 17-1 at 18 (ASAOC at 10 ¶ 29b) (Page ID #200) *with ITT* AOC at Page ID #243–44. Given these material differences between the ASAOC and the *ITT* AOC, we conclude that *ITT Industries* is factually distinct.

Second, Appellants argue that the distinctions between the ASAOC and the *ITT* AOC are irrelevant because the government intended for the changes in its forms only to "'clarify and confirm'" its intent that these agreements resolve a settling PRP's liability under § 113(f)(3)(B). Reply Br. at 22 n.19 (quoting R. 39-1 at 2 (EPA Mem.) (Page ID #559)). The problems with this argument are twofold. One, the EPA memorandum is parol evidence, which can be consulted only in certain limited circumstances. *Williams v. Spitzer Autoworld Canton LLC*, 913 N.E.2d 410, 415 (Ohio 2009). This situation does not fall within one of those narrow exceptions, and therefore, this memorandum is outside the scope of our consideration. Two, even if we could consult this memorandum, it does not mean that *ITT Industries* was correct in its interpretation of the *ITT* AOC. For instance, Congress—on occasion—overrides Supreme Court statutory-interpretation decisions. *See* William N. Eskridge, Jr., *Overriding Supreme Court Statutory Interpretation Decisions*, 101 Yale L.J. 331, 332 n.2, 338 tbl.1 (1991) (collecting cases and documenting frequency). Sometimes, that phenomenon happens because Congress erred or overlooked the implications of statutory language. *See id.* at 388–89. Other times, however, it happens because the Court "misinterpret[s] congressional preferences," erring itself. *Id.* at 388. In those latter cases, Congress's original preferences have not changed, but the legislature alters the language to make those preferences clear to the courts. The government's change in the language of its settlement agreements may be simply this latter scenario playing out. Accordingly, the fact that the EPA memorandum claims only to be clarifying the government's position does not compel this panel to conclude that the ASAOC here is equivalent to the *ITT* AOC. If that logic were applied broadly, it would mean that no actor could ever correct its mistakes or remedy its failure to be clear.

Third, Appellants' other out-of-circuit cases are not persuasive. The consent order in *W.R. Grace & Co.—Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85 (2d Cir. 2009), made no reference whatsoever to CERCLA, which was particularly relevant given that the agreement was between the private party and the *state* environmental department. *Id.* at 91. Here, the ASAOC was

between the EPA and Appellants and cited CERCLA throughout.  In *Agere Systems*, the private parties had no contribution protection.  602 F.3d at 225.  Here, the ASAOC explicitly gives Appellants contribution protection under §§ 113(f)(2) and 122(h).  Finally, in *Bernstein*, the Seventh Circuit held that a PRP could continue its § 107(a)(4)(B) action because it had not sufficiently resolved its liability with the government.  733 F.3d at 212.  The *Bernstein* PRP had to meet certain prerequisites before the administrative order of consent went into effect.  *Id.* Here, as in *RSR Corp.*, which the Seventh Circuit specifically distinguished, the ASAOC went into effect on the Effective Date—August 15, 2006.  Therefore, Appellants' liability was definitively settled—the agreement was in effect, and their liability was certain—and this case is factually distinct from *Bernstein*.

***

In summary, the ASAOC resolved at least some of Appellants' liability with the government.  As a result, the ASAOC is an administrative settlement within the meaning of § 113(f)(3)(B), which allows Appellants to file an action for contribution and fend off similar claims.  Because Appellants can prosecute a § 113(f)(3)(B) contribution action, CERCLA and relevant caselaw prevent Appellants from bringing a § 107(a)(4)(B) action.  Therefore, the district court did not err in dismissing this § 107(a)(4)(B) claim or granting summary judgment on the issue.  As a result, we **AFFIRM** the district court's judgment regarding this issue.

### IV.  Appellants' § 113(f)(3)(B) Claims

Appellants next assert that the district court erred in dismissing their § 113(f)(3)(B) claims as untimely.  The district court determined that § 113(g)(3) contained the appropriate limitations period—three years from the date of settlement—and that because Appellants filed these actions more than three years from August 15, 2006, their § 113(f)(3)(B) claims were untimely.  *Hobart Corp.*, 840 F. Supp. 2d at 1032.  On appeal, Appellants contend that this decision was wrong because, under their reading, § 113(g)(3)'s three-year limitations period applies only to administrative settlements entered into under § 122(g) and (h).  More importantly, according to Appellants, the applicable limitations period can be found in § 113(g)(2), which allows actions for recovery of costs up to three years from the completion of the removal action.  There are several problems with Appellants' argument, however, and as a result, we **AFFIRM**

Nos. 13-3273/3276    *Hobart Corp. et al. v Waste Management of Ohio et al.*    Page 18

the district court's dismissal of Appellants' contribution actions under § 113(f)(3)(B) for being untimely.

"In the ordinary course, a statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'" *CTS Corp.*, 134 S. Ct. at 2182 (quoting Black's Law Dictionary 1546 (9th ed. 2009)).   On this point, CERCLA contains several potentially relevant provisions:

> (g) Period in which action may be brought . . .
>
>> (2) Actions for recovery of costs
>
>> An initial action for recovery of the costs referred to in section [107 of CERCLA, 42 U.S.C. § 9607] must be commenced—
>
>>> (A) for a removal action, within 3 years after completion of the removal action . . . .
>
>> (3) Contribution
>
>> No action for contribution for any response costs or damages may be commenced more than 3 years after—
>
>>> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>
>>> (B) the date of an administrative order under section [122(g) of CERCLA, 42 U.S.C. § 9622(g)] (relating to de minimis settlements) or [122(h) of CERCLA, 42 U.S.C. § 9622(h)] (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

CERCLA § 113(g)(2)–(3); 42 U.S.C.§ 9613(g)(2)–(3).   No one accuses CERCLA of being a well-drafted or an easy-to-follow statute. *See, e.g.*, *Exxon Corp. v. Hunt*, 475 U.S. 355, 363 (1986) (noting that CERCLA "is not a model of legislative draftsmanship"); *Bernstein*, 733 F.3d at 200 ("CERCLA is not known for its clarity, or for its brevity.").   But several conclusions can be drawn from these provisions and relevant caselaw.

First, the text of § 113(g) and the controlling caselaw defeat Appellants' contention that their claim is governed by § 113(g)(2).  Appellants may be correct that conducting a RI/FS is a removal action, *see Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 840 (6th Cir. 1994),

and that the government's authority to enter into a settlement regarding a RI/FS flows from § 122(d), not from § 122(g) or (h).  *See* Appellants Br. at 31–32.  But these facts do not mean that Appellants' *action* is a cost-recovery action under § 107(a)(4)(B) and, therefore, governed by § 113(g)(2).  As explained above, Appellants' action is one for contribution under § 113(f)(3)(B) because Appellants resolved some of their liability with the government in the ASAOC.  Section 113(g)(3) states explicitly that "[n]o action for contribution . . . may be commenced more than 3 years after [a triggering event]."  This court has interpreted this introductory clause to indicate that § 113(g)(3) governs *all* contribution actions.  *RSR Corp.*, 496 F.3d at 556, 558.[12]  And this position finds support from an array of courts.  *See, e.g.*, *Atl. Research*, 551 U.S. at 138–39 (noting that § 107(a) and § 113(f) provide distinct causes of action); *Cooper Indus.*, 543 U.S. at 167 ("[Section] 113 provides two express avenues for contribution:  § 113(f)(1) . . . and § 113(f)(3)(B) . . . .  Section 113(g)(3) then provides two corresponding 3-year limitations periods for contribution actions . . . ."); *Niagara Mohawk*, 596 F.3d at 128 n.19 ("Claims under § 107 do enjoy a six-year statute of limitations while claims under § 113 have a three-year statute of limitations.") (citing 42 U.S.C. § 9613(g)); *United Tech. v. Browning-Ferris Indus.*, 33 F.3d 96, 98 (1st Cir. 1994) ("Cost recovery actions are subject to a six-year statute of limitations, *see* [42 U.S.C.] § 9613(g)(2), while contribution actions must be brought within half that time, *see id.* § 9613(g)(3)."); *Chitayat v. Vanderbilt Assocs.*, 702 F. Supp. 2d 69, 82 (E.D.N.Y. 2010) ("[T]he decisions in *Cooper Industries* and *Atlantic Research Corp.* eliminate the availability of the six-year statute of limitations set forth in section [113(g)(2)] as an option for contribution cases."); *Carrier Corp. v. Piper*, 460 F. Supp. 2d 827, 843 (W.D. Tenn. 2006) ("[T]he proper statute of limitations to apply to a contribution action pursuant to § 113(f)(3)(B) is § 113(g)(3) . . . .").  We see no reason to depart from this widely accepted view and, therefore, hold that § 113(g)(2) is irrelevant to resolving whether Appellants' contribution action was timely filed and that § 113(g)(3) provides the statute of limitations for all contribution actions.

---

[12]To the extent that *ITT Industries* holds that § 113(g)(3) governs only contribution actions stemming from § 122(g) or (h) settlements, *see* 506 F.3d at 460–61, *RSR Corporation* forecloses such a result.  Under the law of the circuit, a three-judge panel cannot overrule a prior panel's published decision without an intervening United States Supreme Court decision or a contrary decision by this court sitting en banc.  *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001).  Here, there was no such decision.  Thus, we remain bound by the earlier panel decision— *RSR Corporation*—on this point.  *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431–32 n.1 (6th Cir. 2000).

The cases that Appellants cite to the contrary are easily distinguished. To start, this court simply did not hold in *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433 (6th Cir. 2004), that "it is appropriate to look to § 113(g)(2)'s limitations periods for the applicable statute of limitations" "where a party bringing a contribution suit incurs costs by means other than one of the triggering events identified in § 113(g)(3)." Appellants Br. at 48 (citing *GenCorp*, 390 F.3d at 443). Rather, this pre-*Cooper Industries* decision stated that the party's "counterclaim constituted 'an initial action for recovery of [] costs,'" and the parties agreed that § 113(g)(2) provided the proper statute of limitations. *GenCorp.*, 390 F.3d at 443. Here, Appellants are suing for contribution, not cost recovery, and the proper statute of limitations is in dispute. Appellants cite three other pre-*Cooper Industries* cases for the proposition that contribution actions can be governed by the limitations found in § 113(g)(2). *See* Appellants Br. at 48 (citing *Geraghty & Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917 (5th Cir. 2000); *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998); *Sun Co.v. Browning-Ferris, Inc.*, 124 F.3d 1187 (10th Cir. 1997)). However, these cases conceived of contribution actions as a subset of cost-recovery actions under § 107. *See Geraghty*, 234 F.3d at 924; *Centerior*, 153 F.3d at 353; *Sun Co.*, 124 F.3d at 1191. *Cooper Industries* and *Atlantic Research* have clarified that §§ 107 and 113 offer distinct causes of action and, therefore, are governed by distinct statutes of limitations. Thus, the cases cited by Appellants are no longer good law on this point.

Second, even though § 113(g)(3) provides the limitations period in this case, the parties have not demonstrated that that section also indicates the triggering event in this case. Appellees and the government contend otherwise, arguing that the ASAOC is a § 122(h) administrative order, which is listed in § 113(g)(3)(B). *See* DP&L Br. at 30–43; United States Br. at 17–19, 23. For support, they cite two paragraphs in the ASAOC and an internal EPA memorandum. *See, e.g.*, United States Br. at 17–19, n.8. These provisions, however, do not do the work that Appellees and the government claim that they do. Paragraph 2 of the ASAOC states: "This Settlement Agreement is issued under authority vested in the President of the United States by Sections 104, 107 *and 122* of [CERCLA]." R. 17-1 at 9 (ASAOC at 1 ¶ 2) (Page ID #191) (emphasis added). While this statement brings § 122 into the conversation, Appellees and the government forget that subsection (h) is not the only provision in § 122. Section 122 provides a general grant of settling authority to the President, *see* § 122(a), and it allows for consent decrees

under § 106, *see* § 122(d)(1).  A general citation to § 122 does not necessarily make the ASAOC a § 122(h) agreement.  Moreover, a reference to § 122(h)(4)'s contribution-protection language in Paragraph 96a, *see* R. 17-1 at 39 (ASAOC at 31 ¶ 96a) (Page ID #221), does not make the ASAOC a full-blown § 122(h) administrative order either, *see ITT Indus.*, 506 F.3d at 461.  This is particularly true for administrative orders, such as the ASAOC, that state that "[t]he actions required by this Settlement Agreement are necessary . . . [under] [§ 122(a)], are consistent with CERCLA . . . [§ 122(a)], and will expedite effective remedial action and minimize litigation, [§ 122(a)]."  R. 17-1 at 17 (ASAOC at 9 ¶ 26) (Page ID #199).  Lastly, while the EPA memorandum from 1998 indicates that the ASAOC *could be* a § 122(h) administrative order, [13] it does not show—nor can it—that the ASAOC (from 2006) *is* such an order.[14]  Given the language of the ASAOC, we cannot conclude definitively that the ASAOC is a § 122(h) administrative order, nor that the ASAOC fits into one of the other triggering events explicitly listed in § 113(g)(3).

Third, even though § 113(g)(3) does not provide an explicit triggering event, controlling and persuasive caselaw indicates that there must be one.  Appellants contend that § 113(g)(3)'s listing of several triggering events precludes a finding that other ones can exist under the principle of *expressio unius est exclusio alterius*.  *See* Appellants Br. at 39 (citing *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 188 (1978)).  However, the Supreme Court has "long held that the *expressio unius* canon does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it, and that the canon can be overcome by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion."  *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013) (internal quotation marks and citations omitted).  In this case, reading § 113(g)(3) to provide for a statute of limitations only in contribution actions triggered by a § 122(h) settlement "would work

---

[13] *See* Memorandum from Sandra L. Connors, Director, Regional Support Division, EPA Office of Site Remediation Enforcement, "Guidance on Administrative Response Cost Settlements under Section 122(h) of CERCLA" (Dec. 22, 1998), *available at* http://www2.epa.gov/enforcement/guidance-superfund-settlements-adminsitrative-response-cost-and-cashout-peripheral.

[14] The best evidence that the ASAOC is a § 122(h) administrative order would be that EPA published it in the Federal Register and considered any comments put forward, as required by § 122(i).  Neither Appellees nor the government provided any evidence that the ASAOC was published, as required, in the Federal Register, and at oral argument, Appellants represented that it had not been.  While not dispositive, this information indicates that the ASAOC is not exclusively a § 122(h) agreement.

considerable damage to the statute." *RSR Corp.*, 496 F.3d at 557; *see also Chitayat*, 702 F. Supp. 2d at 83 ("*Cooper Industries* also suggests that the conclusion that there is no statute of limitations is incorrect.") (citing 543 U.S. at 167). After all, CERCLA's "principal purpose" in having "limitations periods . . . is to ensure that the responsible parties get to the bargaining— and clean-up—table sooner rather than later." *RSR Corp.*, 496 F.3d at 559. Reading § 113(g)(3)'s enumeration of a few triggering events to preclude finding others would defeat this purpose in any instance in which a state, as opposed to the EPA, settles with a PRP or in which the EPA settles according to its general § 122(a) power. *See id.* This result would be illogical.

Fourth, the effective date of the ASAOC is the most logical and convenient triggering event. It is well known that Congress frequently leaves a void in federal statutory law related to limitations periods, *see, e.g.*, *Comm'r v. Fink*, 483 U.S. 89, 104 (1987) (Stevens, J., dissenting), and when that happens, the Supreme Court "do[es] not ordinarily assume that Congress intended that there be no time limit on actions at all," *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). Instead, the Court "'borrow[s]' the most suitable statute or other rule of timeliness from some other source." *Id.* The Court, in most cases, will adopt a "state law of limitations governing an analogous cause of action." *Bd. of Regents of the Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 483–84 (1980). In some cases, however, doing so "would only stymie the policies underlying the federal cause of action," and the Court will instead "look[] for a [statute of limitations] that might be provided by analogous federal law, more in harmony with the objectives of the immediate cause of action." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995). Here, § 113(g)(3)(B) itself provides the most analogous triggering event. It starts the limitations clock for contribution actions related to administrative agreements under § 122(g) and (h) on the date when the settlements become effective. It is only logical that the effective date of the ASAOC—a settlement agreement entered into under § 122(a)—would be the most analogous triggering event in this case.

Appellants claim that such a decision would be unjust because § 122(a) agreements "tend to occur early in the Superfund process and before PRPs who enter into such agreements have had a full opportunity to investigate the involvement of other persons that might have liability at the Site." Appellants Br. at 46. While this statement may be true, it does not change the fact that

PRPs, such as Appellants, have three years from the date that the settlement agreements are signed to identify and file a contribution action against other PRPs.  In any event, setting a different triggering event would undermine CERCLA's goal of encouraging prompt cleanup, as a liable PRP may drag out the removal action until it identifies every other PRP.

***

In summary, we hold that § 113(g)(3) sets the proper limitations period for contribution actions; that § 113(g)(3) does not explicitly list a triggering event in this case; that there must be a triggering event; and that the signing of the ASAOC is the most logical triggering event.  Given these conclusions, the district court did not err in dismissing Appellants' § 113(f)(3)(B) claims as untimely.  The ASAOC's effective date was August 15, 2006.  R. 17-1 at 50 (ASAOC at 37) (Page ID #232).  Appellants first filed an action for contribution on May 24, 2010.  R. 1 at 1 (Compl.) (Page ID #1).  May 24, 2010 is more than three years from August 15, 2006, and therefore Appellants filed their action outside of the limitations period.  Accordingly, we **AFFIRM** the district court's dismissal of Appellants' § 113(f)(3)(B) claims for contribution.

### V.  Appellants' Unjust-Enrichment Claims

Appellants' final claim on appeal is that the district court erred in dismissing their unjust-enrichment claim.  Specifically, Appellants argue that the district court incorrectly relied upon federal law in adjudicating this state-law claim.  Appellants Br. at 49–52; Reply Br. at 27–31.  Appellants, however, misunderstand the district court's decision:  there was no Ohio law on point to decide this question, and the district court turned to federal cases in determining whether Appellants failed to state a claim for unjust enrichment under Ohio law.  *See Hobart Corp.*, 840 F. Supp. 2d at 1036–37.  We conclude that this was not error and, thus, **AFFIRM** the dismissal of this state-law claim.

Unjust enrichment is a state-law claim for restitution.  In Ohio, a plaintiff must allege facts satisfying the following elements:  "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (internal quotation marks omitted).  Ohio law requires

that a plaintiff also "show that the substantial benefit to the defendant is 'causally related' to the substantial detriment to the plaintiff." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501–02 (6th Cir. 2003) (quoting *Gaier v. Midwestern Grp.*, 601 N.E.2d 624, 627 (Ohio Ct. App. 1991)). Moreover, "[i]n determining whether a defendant received an unjust or unconscionable benefit, we must consider whether 'the defendant was the party responsible for the plaintiff's detrimental position.'" *Id.* at 502 (quoting *United States Health Practices, Inc. v. Blake*, No. 00AP-1002, 2001 WL 277291, at *2 (Ohio Ct. App. Mar. 22, 2001)).

Under this standard, it is clear that the district court correctly dismissed Appellants' unjust-enrichment action for failure to state a claim under Ohio law. The "benefit" that Appellees received was Appellants' failure to file a contribution action in a timely manner. Even if we assume that this failure qualifies as a "benefit" under the first prong in *Johnson*, Appellees did not cause Appellants' detrimental position—having to shoulder the cost of the RI/FS and the government's response costs alone. Appellants were already liable under the ASAOC for paying the cost of the RI/FS and for reimbursing the government's response costs. As Appellants concede, the ASAOC was a "voluntary agreement." Appellants Br. at 51. Therefore, Appellees were not responsible for "plaintiff's detrimental position," and Appellants have failed to allege a valid unjust-enrichment claim under Ohio law. As a result, we **AFFIRM** the district court's dismissal of the claim.

## VI. CONCLUSION

Appellants cannot bring a § 107(a)(4)(B) cost-recovery action because they resolved their liability with the government in the ASAOC, which allowed them to bring a § 113(f)(3)(B) contribution action. These remedies are mutually exclusive. Appellants failed to file their § 113(f)(3)(B) contribution action within the applicable statute of limitations, however, and Appellants failed to allege facts showing that Appellees caused Appellants' detriment, thus failing to state a valid unjust-enrichment cause of action under Ohio law. For these reasons, we **AFFIRM** the district court's dismissals and grants of summary judgment to Appellees on each claim.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 13-3273/3276

HOBART CORPORATION; KESLEY-HAYES
COMPANY; NCR CORPORATION,
         Plaintiffs - Appellants,

    v.

WASTE MANAGEMENT OF OHIO, INC. et al. (13-3273)
and COCA-COLA ENTERPRISES, INC. et al. (13-3276),
         Defendants - Appellees.

```
                                    ┌─────────────────────────┐
                                    │         FILED           │
                                    │      Jul 14, 2014       │
                                    │  DEBORAH S. HUNT, Clerk │
                                    └─────────────────────────┘
```

Before: MOORE and KETHLEDGE, Circuit Judges; TARNOW, District Judge.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Dayton.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's dismissals and grants of summary judgments to Appellees on each claim are AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk